USDC EDWI
FILED IN GREEN BAY DIV

AUG 2 8 2012

AT_____ O'CLOCK____ M
JON W. SANFILIPPO

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

the single-family residence located at:

**131 North Locust Street**
**Appleton, Wisconsin**

APPLICATION & AFFIDAVIT
FOR SEARCH WARRANT

Case Number: 12-M-682

I, Steven Curran, being first duly sworn depose and state:

I am a Special Agent with the United States Drug Enforcement Administration, have reason to believe that on the property or premises known as:

131 North Locust Street, Appleton, Wisconsin, which is a 2-story, cream colored single-family residence with a brown roof and trim, and includes a detached garage. The residence faces toward Locust Street to the east. The numbers "131" are black in color on a white backing and are posted above the front door on the East side of the residence.

in the E.D. of Wisconsin there is now concealed certain property, namely: marijuana, cash, contact information for co-actors, receipts and records relating to drug manufacture and sales, firearms and ammunition, photographs of marijuana, documents showing dominion and control of the properties, receipts and records relating to firearms purchases and sales, photographs of firearms and co-actors, vehicles, and electronic storage devices -- including cell phones, smart phones, and computers – containing records, photographs, and documents described herein,

that is evidence of the commission of crimes, concerning violations of Title 18 USC Section 922(a)(1), and 21, United States Code, Sections 841(a)(1) and 846.

The facts to support a finding of probable cause are stated on attached affidavit, which is continued on the attached sheet and made a part hereof.     **X** Yes    \_\_\_ No

Sworn to before me, and subscribed in my presence:

_____
Signature of Affiant: STEVEN CURRAN

8/28/ , 2012  10:30 AM
Date and time issued

at Green Bay, Wisconsin
City and State

HONORABLE JAMES R. SICKEL
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Steven B. Curran, being first duly sworn on oath, depose and state as follows:

1.  I am employed as a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been so employed since August of 2000. As a Special Agent, I have received specialized training in controlled substance investigations. Additionally, I have been a law enforcement officer since June of 1988.

2.  As part of my duties as a Special Agent, I assist state and local drug enforcement agencies by gathering intelligence information about persons involved in controlled substance violations and investigating state and federal drug crimes.

3.  This affidavit is based on my experience and background as a law enforcement officer; conversations held with agents and investigators of the Drug Enforcement Administration (DEA), Wisconsin Division of Criminal Investigations (DCI), and the United States Forest Service (USFS); physical surveillance; Administrative Subpoenas, and on information obtained through public sources such as CLEAR.

4.  During my time of employment with the DEA, I have become familiar with the operations of Drug Trafficking Organizations as well as outdoor marijuana grows in general. This familiarity has come from researching reports from other DEA cases on DTO marijuana grows that have occurred in the states of Washington, Oregon, California, and Utah; interviews of defendants who provided detailed information regarding their involvement in large marijuana grows, interview reports of suspects who have provided details of the methods used by marijuana DTO's; lengthy conversations with several DEA Agents and Task Force Officers with experience dismantling DTO marijuana grows on public and private lands, training videos that were provided by law enforcement personnel and personally dismantling DTO marijuana grows.

1

5. Based on my training and experience, I know that outdoor marijuana grows have many of the following characteristics:

   a. Located in remote areas;

   b. Located near water sources;

   c. Located in an area with tree cover;

   d. Select trees are often cut off approximately 3-4 feet from the ground to allow sunlight to reach the marijuana plants;

   e. On private land, "No Trespassing" signs are often posted to keep the general public away from the property;

   f. Trees that are cut down are utilized to make shelters which are used to live in and also used to process marijuana;

   g. Hoses or plastic tubing are utilized to transfer water from a water source (pond or river) to the grow site; and

   h. a re-supply point.

6. Persons living inside the marijuana grow sites often never leave the grow sites until after the plants have been harvested. These persons rely on persons, commonly referred to as "luncheros", to deliver food and marijuana growing supplies (such fertilizer, chemical animal replant, tools, etc.). "Luncheros" are known to deliver supplies to "re-supply points" located near the marijuana grow sites. The dates and times that the "Lunchero" visit the sites vary. "Luncheros" are known to supply several grow sites in a given day or days. "Luncheros" and the persons inside the grow site may never see each other as the "Lunchero" will drop off the supplies, pick up a supply list that was left by persons inside the grow site, and leave; the persons in the grow site will later retrieve the items left by the "Lunchero" and leave another supply list.

7. DTO marijuana grow operators often have multiple grow sites. DTO's know that law enforcement agencies conduct marijuana eradication programs that specifically look for marijuana grows on public lands. DTO's know that some of their marijuana grow sites are likely to be detected by law enforcement and eradicated. Therefore, DTO's often work several grow sites at the same time, some which may be located hundreds of miles from other sites.

## 2012 OCONTO COUNTY GROWS

8. In early June of 2012, law enforcement officers were contacted by a Wisconsin DNR game warden who reported that a citizen reported finding a marijuana cultivation site along the South Branch of the Oconto River near County Highway T in Oconto County, Wisconsin. On June 15, 2010, Forest Service agents conducted aerial surveillance and confirmed the presence of at least three marijuana cultivation sites in the area.

9. Between June 27 and June 29, 2012, law enforcement agents installed convert digital cameras covering possible vehicle entry ways into the area of the marijuana grows, entry ways that could be used to resupply the workers who would be living in and actively working the grows. These entry ways, or resupply points, are on National Forest lands in a remote area of Oconto County and are infrequently used by the public.

10. Also on June 29, 2012, agents walked into the area of the grows and confirmed the existence of at least two marijuana gardens and the presence of at least one person in the grows who appeared to be cultivating the marijuana.

11. The covert digital cameras set to cover the access/vehicle entry points to the grows recorded the following:

    a. On July 11 and again on July 17, 2012, a burgundy 1998 Pontiac Grand Prix bearing WI plate 913TEY came and left the resupply point for the grows. On the

11th, the Grand Prix came and left (within minutes) from the resupply point at 9:49 a.m. and again at 3:49 p.m. The vehicle arrived at the grow resupply point on July 17th at 3:53 p.m. and left at 4:05 p.m. This activity is consistent with dropping off and picking up a worker or workers for the grow site. The Grand Prix is registered to a Maria Blanca Garcia of 510 West Main Street, Brandon, Wisconsin, Apartment 101.

12. On July 17, 2012, agents conducted visual surveillance of the grow sites and observed two individuals dressed in camouflage walking through the grows.

13. I have been involved in the installation, monitoring, maintenance, and retrieval of GPS or Electronic Tracking Devices (ETDs) on vehicles on several occasions. The ETD is covertly placed on the target vehicle, and is equipped with a satellite radio receiver, which, when programmed, periodically records, at specified times, the latitude, longitude, date and time of readings and stores these readings until they are downloaded to a computer interface unit and overlaid on a computerized compact disk mapping program for analysis.

14. A GPS/ETD was surreptitiously installed on the Grand Prix registered to Maria Blanca Garcia on July 23, 2012. Monitoring of the ETD on the target vehicle and visual surveillance has demonstrated that the vehicle is being used to transport individuals to and from the grow sites in Oconto County. Monitoring and surveillance has also shown that Maria Blanca Garcia is operating the vehicle in support of the grow operation and that she, as well as others who I believe are workers on the grow operation, are utilizing apartment 101 at 510 West Main Street, Brandon.

15. On Tuesday July 24, 2012 USFS, WI DNR, and US Customs and Border Protection conducted aerial surveillance of the target area and located approximately 8-10 more sites, just north of the previously identified grows, along the Oconto River.

16. Later that day, the Grand Prix with the GPS on it came to the area of the grows in Oconto County. Based on physical observations and GPS data, agents learned that the driver of the Grand Prix travelled past the known resupply point and continued north on County T. An agent followed her for approximately a half mile at which point the driver abruptly pulled over, let the agent pass, and then turned around back toward the resupply point. The agent was able to see the driver, who appeared to closely resemble the driver's license photograph of MARIA BLANCA GARCIA. Only two occupants (including driver) were in the vehicle at the time

17. The driver headed back south on T. GPS data shows that she pulled into an old timber sale landing north of the known resupply point and stayed for approximately 3 minutes. The timber sale landing is near to the recently discovered additional grows north of the initially discovered grows. From the timber landing, Marian Garcia drove back through Mountain, WI using the same route she used to come to the grow area. Agents conducting surveillance in Mountain, observed that there were 5-6 people in the car at the time. The addition of 3 to 4 persons is consistent with Maria Garcia picking up workers from the forest grow sites near the Oconto River west of Highway T in Oconto County, Wisconsin.

18. Garcia continued to drive south toward Brandon, Wisconsin. Agents requested that a Wisconsin State Trooper conduct a traffic stop on the vehicle. A trooper stopped the vehicle and confirmed through a driver's license that Maria Blanco Garcia of the West Main Street, Brandon, WI address was the driver of the vehicle in which four males were passengers.

GPS data shows that after the stop, the vehicle proceeded to the area of the West Main Street Brandon apartment.

19. On July 31, 2012, GPS data and surveillance by agents showed that that Grand Prix driven by Maria Garcia travelled from the area of the Brandon, WI apartment to the Hwy T grow sites along the Oconto River in Oconto County. Maria Garcia had a male passenger with her. She stopped at a Wal-Mart along the way before going to two potential points for resupplying those working the Hwy T grows. A receipt from the Wal-Mart shows that she purchased over $200 worth of food and water. Surveillance by agents at one of the resupply points demonstrates that as the Grand Prix arrived, three males came out from the area of the grows with empty back packs and then walked back to on a trail toward the grows will full back packs.

20. On July 31, 2012, agents walked into the area of the grows along the Oconto River off Hwy T and confirmed the presence of many marijuana plants as well as a site that appeared to be ready for processing the marijuana.

21. Subsequent surveillance combined with monitoring of the data from the GPS on the Grand Prix has shown that the Grand Prix travelled to the area of the Oconto River grows on August 5th, 8th, 16th, and 20th before returning to the Brandon apartment. On August 8, the Grand Prix travelled to a Wal-Mart prior to travelling to the grow sites. Video and receipts from the Wal-Mart show that Maria Garcia purchased tarps and scissors. Based on my experience, I know that these items are used in processing recently harvested marijuana. Agents conducting surveillance on the ground near the Oconto River grows have observed what they believe to be a processing area set up in the forest near to the grow sites. Photographs surveillance from the

resupply point confirms that two males came out of the woods to meet the driver of the vehicle and carry plastic bags back into the woods on August 16.

22. Law enforcement surveillance, assisted by GPS data, showed that the Grand Prix travelled from Brandon, WI to the area of the Oconto River grows and back on August 20th. Law enforcement agents confirmed that Maria Blanca Garcia was the driver of the Grand Prix on that date. Photographic surveillance from the resupply point for the grows shows Maria Blanca Garcia and one of the males who was in the vehicle when stopped on July 24th meeting with two males and unloading grocery bags from the trunk of the Grand Prix. The two males then shuttled the grocery bags into the woods.

23. Law enforcement also obtained information on the rental of Apartment 101 at 510 West Main Street, Brandon, WI from the landlord for the building. The landlord's records show that the apartment was rented by a Blanca Garcia. Cable T.V. records show that Maria Garcia is the current subscriber for service for Apartment 101. Within the past two weeks, agents conducting surveillance at the Brandon, WI apartment rented by Maria Blanca Garcia have observed the Grand Prix along with a second vehicle registered to Maria Blanca Garcia in the parking area for the apartment building. That vehicle is a white 2007 Ford pickup truck with Washington State plate number B45761T. Title records show that the vehicle is registered to Maria B Garcia at an address in Othello, Washington. A record check for Maria Blanca Garcia shows that prior to the fall of 2011 Maria Blanca Garcia was residing in Washington State.

24. With the maturing of the marijuana in the grows and preparation for the harvest and processing, the operators of the grow must secure buyers for the marijuana. Based on surveillance and GPS data, I believe that one of those who has been negotiating with the operators of the Oconto grows is Kamel Khatib of Appleton, WI. Khatib is currently facing a

7

felony charge of possession of marijuana with intent to distribute in Outagamie County Circuit Court based arising out of the execution of a search warrant at Khatib's Appleton residence in which agents found distribution quantities of marijuana.

25.     On August 5, 2012, surveillance and monitoring of the GPS on the Grand Prix showed that it drove to Lakewood, (Oconto County) Wisconsin – north and east of the Oconto River grows. Agents observed meetings of the occupants of the Grand Prix – Maria Blanca Garcia and at least one adult Hispanic male – and the operator of a blue Nissan Murano bearing Wisconsin plate 570RCK. The group met first at a restaurant in Lakewood, and then at a Forest Service wayside south of Lakewood. Surveillance cameras at a resupply point for the Oconto River grows photographed the blue Nissan Murano with plate 570RCK on August 5 and also photographed two males coming from the Nissan. Agents familiar with Kamel Khatib have identified Khatib as one of these individuals. The Murano was observed at the resupply or landing point before and after the meeting with the occupants of the Grand Prix described above. The photographic surveillance shows Khatib and the second individual walking around the resupply point as if looking for something.

26.     On August 21, 2012, agents conducting surveillance in the evening hours at the resupply point observed several large black garbage bags at the site. The agents looked in the bags and observed kilograms of processed marijuana divided between numerous vacuum sealed bags. The bags appeared to be left for pickup by a customer or co-actor. The agents surveilled the resupply point until midnight. The bags were not present at the location the following morning, consistent with the bags being picked up. GPS data from the Grand Prix shows that the Grand Prix did not travel to the area of the Oconto grows sites that evening or during the morning of the following day. Based on these observations, I believe that Khatib's walking

around the landing or resupply point on August 5, 2012 is consistent with Khatib looking for marijuana that was left at the landing for him to pick up after making arrangements with the occupants of the Grand Prix. .

27. Within the past two weeks, DCI agents used a confidential informant to place a call to Khatib. The call was monitored by the agents. During the call, Khatib advised that he was looking to buy a large quantity of firearms – more than 20 9mm handguns and assault-type rifles, and a large quantity of marijuana – more than 100 pounds. The call is consistent with the surveillance of Khatib going to the Oconto River grow site and meeting with the grow operators on August 5, 2012.

28. The DCI CI called Khatib at 424-901-9355. Service provider records show that the phone is a Sprint cellular phone subscribed to by a Linda Contreras of Neenah, WI. Court records show that Linda Contreras is the ex-wife of Kamel Khatib. Public records show that the blue Nissan Murano bearing WI plate 570RCK is a 2006, registered to Linda Khatib Contreras.

29. Based on the above information, agents obtained a Warrant to place a GPS tracking device on the Nissan Murano on August 16, 2012. Agents have since been unable to find the Nissan Murano and other evidence shows that Kamel Khatib is using another vehicle and is still working with the operators of the Oconto River grows.

30. On August 16, 2012, officers with the Appleton Police Department conducted surveillance of a residence located at 131 N. Locust Street in Appleton, WI. The residence had been linked to Kamel Khatib through prior investigation. At approximately 2:10 p.m., officers observed a black Volkswagen Sedan bearing Wisconsin Plate number 220RHY arrive at the residence. Officers observed Kamel Khatib exit the Volkswagen and enter the residence. Khatib exited minutes later with a second individual, reentered the Volkswagen and drove off.

31. On August 24, 2012, an ATF undercover agent met with Kamel Khatib in the black Volkswagen sedan with WI plate 220RHY parked outside of the residence at 131 N. Locust Street in Appleton, Wisconsin. Khatib and the undercover agent talked for over an hour in the Volkswagen sedan. During the conversation, Khatib advised that the residence at 131 N. Locust Street, Appleton, was a residence that he controlled. During the conversation Khatib expressed his interest in buying 60 firearms to be re-sold by Khatib and shipped overseas. Khatib advised that if the UC were to bring firearms to Appleton for Khatib, the UC could pull his automobile directly into the garage at 131 Locust for unloading of the firearms.

32. Khatib also told the UC that he had a partner with whom he was dealing marijuana and that the partner only spoke Spanish. The information is consistent with the surveillance of Khatib meeting with members of the Oconto grow operation. Law enforcement officers have been close enough to the operators of the Grand Prix to hear them speak and heard them speaking in Spanish. GPS data from the Grand Prix shows that the Grand Prix travelled from the Brandon apartment to 134 Locust Street, Appleton – consistent with the 131 Locust Street location – on August 5, August 6, August 12, and August 23.

33. On August 24, 2012, after Khatib met with the UC, Khatib called the UC agent and made arrangements to purchase 4 AK 47 style rifles from the UC with the deal to be completed the following Tuesday.

34. Khatib is not a federally licensed firearms dealer. The buying and selling of firearms proposed by Khatib is consistent with dealing in firearms without a license, a violation of 18 USC Section 922(a)(1). Khatib is also under indictment or information for a felony and cannot lawfully possess a firearm under 18 USC Section 922(n).

35. Based on my training and experience in executing more than one hundred drug search warrants, I know that those involved in large scale marijuana grow operations maintain things necessary to the success of their operations in places they control, including their residences and in vehicles they utilize. Based upon my training and experience, I know that these materials include marijuana, gardening tools, cash, contact information for co-actors, receipts and records relating to drug manufacture and sales, firearms and ammunition, and photographs and documents showing dominion and control of the properties. The contact information, receipts, records, photographs, and documents described above may be on paper as well as in electronic storage devices including cell phones, smart phones, and computers.

36. Based on the investigation, I believe that evidence of illegal firearms trafficking can now be found in the residence at 131 North Locust Street, Appleton, WI and in a black Volkswagen Sedan bearing WI plate 220RHY. I believe that this evidence includes firearms and ammunition, documents of dominion and control of the residence, contact information for co-actors, receipts and records relating to firearms purchases and sales, photographs of firearms and co-actors, and cash that is intended to be used to purchase firearms. The contact information, receipts, records, photographs, and documents described above may be on paper as well as in electronic storage devices including cell phones, smart phones, and computers.

37. Based on the investigation, I believe that Kamel Khatib is a customer of and partner in a marijuana grow operation west of Hwy T, along the South Branch of the Oconto River, in the Nicolet National Forest. I further believe that evidence of the grow operation and marijuana distribution as described above can now be found in the residence at 131 North Locust Street, Appleton, WI.

38. Agents have observed the property at 131 North Locust Street, Appleton, Wisconsin. The residence is more particularly described as 2-story, cream colored, single-family residence with a brown roof and trim, and includes a detached garage. The residence faces toward Locust Street to the east. The numbers "131" are black in color on a white backing and are posted above the front door on the East side of the residence.

*[signature]*
STEVEN B. CURRAN
Special Agent
United States Department of Justice
Drug Enforcement Administration

Subscribed and sworn to before me this 28 day of August, 2012.

*[signature]*
HONORABLE JAMES R. SICKEL
United States Magistrate Judge
Matter No. 12-M-682